**In re Johnny BOZEMAN, Jeannie Bozeman, a/k/a Jeannie Shank, Debtors.**

**Johnny Bozeman, Jeannie Bozeman, a/k/a Jeannie Shank, Plaintiffs,**

v.

**Department of Revenue of the State of Florida, Defendant.**

**Bankruptcy No. 97–60549.
Adversary No. 00–6015.**

United States Bankruptcy Court,
M.D. Georgia,
Thomasville Division.

Jan. 23, 2002.

---

Neal Weinberg, Macon, GA, for debtors.

Kristin Smith, Columbus, GA, trustee.

### *MEMORANDUM OPINION*

JOHN T. LANEY, III, Bankruptcy Judge.

On July 11, 2001, the court held a hearing on the motion to dismiss the Department of Revenue of the State of Florida ("State of Florida") as a defendant, the motions to dismiss the United States of America ("USA"), and the motion for summary judgment of the Dale County Alabama Child Support Unit ("Alabama"). At the conclusion of the hearing, the court granted USA's motions to dismiss, contin-

ued Alabama's motion, and took under advisement the State of Florida's motion. Since the time of the hearing, the court granted Alabama's motion for summary judgment.

Therefore, the sole issue before the court is whether the Eleventh Amendment to the United States Constitution provides immunity to the remaining defendant in this case. At the conclusion of the hearing, the court asked the parties to submit briefs discussing the issue of sovereign immunity under the Eleventh Amendment. After considering the parties' oral arguments, briefs, and the applicable statutory and case law, the court will grant the State of Florida's motion to dismiss.

### FACTS

On July 11, 1997, Debtors Johnny and Jeannie Bozeman ("Plaintiffs") filed a voluntary petition under Chapter 13 of the Bankruptcy Code ("Code"). On August 21, 2000, Plaintiffs filed their initial complaint for violation of § 362 of the Code, damages, and declaratory and injunctive relief. In this initial complaint, only USA and Alabama were named as defendants. Plaintiffs allege that the Internal Revenue Service violated § 362 of the Code by offsetting Plaintiffs' 1997 and 1998 federal income tax refunds to pay Plaintiff Johnny Bozeman's delinquent child support obligation to Alabama. The demand letter and notice to offset which were sent to Plaintiff Johnny Bozeman came from the Offset Coordinator in the Ft. Myers, Florida office. However, the State of Florida was not named as a defendant in Plaintiffs' initial complaint. (Compl. Exhs. "1" & "4").

Plaintiffs amended their complaint several times in which they added as defendants, the State of Florida, Charles O. Rossotti, Commissioner of the Internal Revenue Service ("Rossotti"), and Paul O'Neill, Secretary of the Treasury Department ("O'Neill"). USA filed motions to dismiss USA, Rossotti and O'Neill as defendants. Alabama filed a motion for summary judgment and an amended motion for summary judgment. The State of Florida also filed a motion to dismiss it as a defendant.

On July 11, 2001, the court held a hearing on the motions to dismiss USA and the State of Florida as defendants and Alabama's motion for summary judgment. At the conclusion of the hearing, the court granted USA's motions to dismiss USA, Rossotti, and O'Neill, and continued the hearing on Alabama's motion to September 19, 2001. On September 24, 2001, the court entered an order granting Alabama's motion for summary judgment thereby leaving the State of Florida as the sole defendant in this adversary proceeding. The court took under advisement the State of Florida's motion to dismiss.

In its motion, the State of Florida contends that the Eleventh Amendment to the United States Constitution provides immunity to the claims of the Plaintiffs. The State of Florida makes an alternative argument that the offset refunds were not property of the estate, therefore, those funds are not subject to the automatic stay under § 362 of the Code. The court notes that the State of Florida did not address this alternative argument in its brief. (*See* Doc. # 62).

Plaintiffs, however, argue that the State of Florida waived its sovereign immunity. Plaintiffs assert that when the State of Florida utilized the federal income tax refund offset program, the State of Florida entered into an area regulated by federal statute and thereby waived its sovereign immunity. Plaintiffs further argue that the State of Florida waived its sovereign immunity when it sought and received funds from the United States.

### DISCUSSION

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced against one of the United States by Citizens of another State, or by Citizens of any Foreign State.

U.S. CONST. amend XI.

Accordingly, states have immunity from suits brought by citizens of another state. *See Edelman v. Jordan*, 415 U.S. 651, 662, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Although the text of the Eleventh Amendment does not appear to bar suits brought by citizens against their own state, it has long been recognized to bar such suits. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

While state immunity from suit is extensive, it is not absolute. However, the United States Supreme Court has recognized only two instances in which an individual may sue a state. *See College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, et al.*, 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). First, Congress may abrogate a state's sovereign immunity. *Id.* In order to validly abrogate the immunity, Congress must "unequivocally express[ ] its intent to abrogate the immunity," and it must also act "pursuant to a valid exercise of power." *Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. 1114. The Supreme Court has recognized the "valid exercise of power" to be Congress's power to enforce the provisions of the Fourteenth Amendment. *College Savings Bank*, 527 U.S. at 670, 119 S.Ct. 2219 (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). Second, a state may waive its sovereign immunity by

consenting to being sued. *See Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883). The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). *See also Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)(holding that a state's consent to suit must be "unequivocally expressed").

The courts are split on whether Congress has validly abrogated state sovereign immunity by enacting § 106 of the Code. *See Mitchell v. Franchise Tax Bd. (In re Mitchell)*, 209 F.3d 1111, 1112 (9th Cir.2000)(holding that § 106 does not validly abrogate a state's sovereign immunity); *Sacred Heart Hosp. v. Pennsylvania (In re Sacred Heart Hosp.)*, 133 F.3d 237, 245 (3d Cir.1998); *Schlossberg v. State of Maryland, Comptroller of the Treasury (In re Creative Goldsmiths)*, 119 F.3d 1140, 1146–47 (4th Cir.1997)(same); *Peterson v. State of Florida, Dep't of Revenue (In re Peterson)*, 254 B.R. 740, 745 (Bankr. N.D.Ill.2000)(same); *Wilson v. South Carolina State Educ. Assistance Auth. (In re Wilson)*, 258 B.R. 303, 310 (Bankr.S.D.Ga.2001)(Dalis, C.J.)(holding that § 106 validly abrogates state sovereign immunity as an exercise of Congress's power under the Privileges and Immunity Clause of the Fourteenth Amendment); *Hood v. Tennessee Student Assistance Corp. (In re Hood)*, 262 B.R. 412, 414 (6th Cir. BAP 2001)(holding that as a part of the plan of the Constitutional Convention, the States ceded their sovereign immunity to Congress).

However, Plaintiffs do not advance an abrogation argument. Instead, Plaintiffs argue that the State of Florida waived its immunity by its actions in offsetting Plain-

tiffs' tax refund. There is no suggestion that the State of Florida consented to suit. Therefore, the narrow issue is whether the State of Florida impliedly or constructively waived its sovereign immunity.

■ Initially, the court notes that the parties do not dispute that the Department of Revenue of the State of Florida is an agency of the state for Eleventh Amendment purposes. In *Peterson*, the court held that Florida's Child Support Enforcement Office of the Department of Revenue is "unquestionably an arm of the state for the purposes of the amendment." *Peterson*, 254 B.R. at 743. The court also held that an adversary proceeding seeking a turnover of funds from the Department of Revenue is a "suit" for Eleventh Amendment purposes. *Id.* Accordingly, the court finds that this case is a suit against a unit of the state as defined in the Eleventh Amendment.

■ Plaintiffs rely on several circuit cases for the proposition that the State of Florida constructively waived its immunity by "entering into an area regulated by federal statute ...." (Pls.' Br. at pp. 6–7, Doc. # 90)(citing *Sullivan v. Town & Country Home Nursing Services, Inc. (In re Town & Country Home Nursing Services)*, 963 F.2d 1146 (9th Cir.1991); *WJM, Inc. v. Mass. Dep't of Public Welfare*, 840 F.2d 996 (1st Cir.1988); *Intracoastal Transportation, Inc. v. Decatur County*, 482 F.2d 361 (5th Cir.1973)).[1]

*Town & Country*, like the case before the court, involved the offset of funds by the federal government on behalf of a unit of the state. The debtor in *Town & Country* was entitled to receive reimbursements from the federal government pursuant to the Medicare Act, 42 U.S.C. §§ 1395–

1395ccc. As a result of an overpayment of allowed reimbursements to the debtor, the state fiscal intermediary, through the Department of Health and Human Services, offset the amount due against the debtors reimbursements. *Town & Country*, 963 F.2d at 1147.

The Ninth Circuit held that the state fiscal intermediary waived its sovereign immunity. *Id.* at 1153. Relying on *Parden v. Terminal Ry.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), the court noted that a state "may waive its sovereign immunity by affirmatively engaging in a federally regulated activity in which Congress clearly has made waiver of immunity a necessary condition of state participation." *Town & Country*, 963 F.2d at 1153 n. 3.

However, in *College Savings Bank*, the Supreme Court expressly overruled *Parden*. 527 U.S. at 680, 119 S.Ct. 2219. In *College Savings Bank*, the court noted that it had begun to retreat from *Parden* as early as 1973. *Id.* at 677, 119 S.Ct. 2219 (citing *Employees of Dep't of Public Health and Welfare of Mo. v. Department of Public Health and Welfare of Mo.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973)). In *Employees*, the majority refused to find that the state of Missouri constructively waived its sovereign immunity in a suit under the Fair Labor Standards Act. 411 U.S. at 485–86, 93 S.Ct. 1827. The Court reasoned that the statute did not express "with clarity Congress's intention to supersede the States' immunity from suits brought by individuals." *Id.* at 285, 93 S.Ct. 1827. Writing for the majority in *College Savings Bank*, Justice Scalia pointed out that the absence of clarity in the statute was the same reason that

---

1. The court notes that *Intracoastal Transportation* has been recognized as overruled in *Vieux Carre Property Owners, et al. v. Brown*, 875 F.2d 453, 457 (5th Cir.1989). Also, *WJM* has been abrogated by *Reopell v. Massachusetts*, 936 F.2d 12 (1st Cir.1991).

four of the Justices in *Parden* dissented. 527 U.S. at 677, 119 S.Ct. 2219.

One year after *Employees*, the Court in *Edelman* observed that "there is 'no place' for the doctrine of constructive waiver in our sovereign immunity jurisprudence ...." *Id.* at 678, 94 S.Ct. 1347 (citing *Edelman*, 415 U.S. at 651, 94 S.Ct. 1347). In comparing *Parden*-style waivers with other constitutionally protected privileges, the Court in *Edelman* noted that "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights." 415 U.S. at 673, 94 S.Ct. 1347. Therefore, in overruling *Parden*, the court held that "*Parden* stands for an anomaly in the jurisprudence of sovereign immunity, and indeed in the jurisprudence of constitutional law." *College Savings Bank*, 527 U.S. at 680, 119 S.Ct. 2219.

The court finds that the Supreme Court's rationale in *College Savings Bank* is applicable to this case. Even if there was a place for constructive *Parden*-style waivers of sovereign immunity, the statutes at issue,[2] do not express with clarity that a state waives its sovereign immunity by its participation in the federal regulated activity. Accordingly, the court finds that the State of Florida did not waive its sovereign immunity by participating in the offset program.

█ The Plaintiffs present another constructive waiver argument. Plaintiffs maintain that seeking funds from the federal government through the offset program constitutes a waiver of sovereign immunity. For support, Plaintiffs rely on the case of *Hatmaker, et al. v. Georgia Dep't of Transp.*, 973 F.Supp. 1047 (M.D.Ga.1995).

In *Hatmaker*, the court held that the Georgia Dep't of Transp. waived its Eleventh Amendment immunity when it requested and received federal funds under the Federal–Aid Highways Act. 973 F.Supp. at 1053. The court in *Hatmaker* relied on the case of *Named Individual Members of the San Antonio Conservation Society v. Texas Highway Dep't of Transp.*, 446 F.2d 1013, 1028 (5th Cir. 1971). However, in *San Antonio Conservation Society*, the issue of "Eleventh Amendment immunity was neither raised nor discussed ..." therefore, that case is "unpersuasive and not controlling." *Daye v. Pennsylvania*, 344 F.Supp. 1337, 1346 (E.D.Pa.1972). *See also Road Review League v. Boyd*, 270 F.Supp. 650 (S.D.N.Y. 1967); *DeLong Corp. v. Oregon State Highway Comm'n*, 233 F.Supp. 7 (D.Or. 1964), *aff'd* 343 F.2d 911 (9th Cir.1965)(holding that the state does not waive its immunity from suit by participating in the federal highway program and seeking funds from that program).

Given the overwhelming authority contrary to *Hatmaker* and the fact that the Supreme Court has disavowed constructive waivers of state sovereign immunity, the court rejects the reasoning in *Hatmaker*. Therefore, the court finds that the State of Florida did not waive its sovereign immunity by requesting federal funds from the federal government.

### CONCLUSION

None of the actions taken by the State of Florida constitutes a waiver of its Eleventh Amendment immunity. In the absence of waiver of sovereign immunity, the court is without jurisdiction to entertain a

---

**2.** *See* 26 U.S.C. § 6402(c) and 42 U.S.C. § 664. These two statues provide that when a state agency notifies the U.S. Dep't of Treasury of an individual's past-due child support obligation, the Dep't of Treasury is required to offset monies from such individual's income tax refund and remit those funds to the state agency.

suit against the State of Florida. Therefore, the court will grant the State of Florida's motion to dismiss.

An order in accordance with this Memorandum Opinion will be entered.